# EXHIBIT

# A

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release (hereinafter "Agreement") is made and entered into by Ventnor Beauty Supply, Inc.; Adam Prussel and Gene Masco (hereinafter referred to collectively as "VBS" or "Defendants") and Michael Green (hereinafter referred to as "Claimant" or "Green").

WHEREAS, Claimant has asserted certain claims against Defendants relating to his employment and/or relationship with Defendants including, but not limited to, the allegations contained in a Complaint filed in the United States District Court for the District of New Jersey-Camden Vicinage and under Docket No. 18-15673 (collectively "Claims);

WHEREAS, Claimant and Defendants (collectively "Parties") wish to settle all controversies among and between them including, but not limited to, Claimant's Claims as set forth above, and any and all related claims which could have been asserted, filed or brought by Claimant against Defendants, whether known or unknown;

WHEREAS, all Parties acknowledge that the merits of the controversy are in dispute and have not been adjudicated, and no party admits any liability to any other; and

WHEREAS, this Agreement and the settlement set forth herein shall not be construed as an admission of any wrongdoing in any manner and Defendants expressly denies each and every allegation made by Claimant, and enters into this Agreement for reasons other than the merits of the claims, including to avoid the time and expense of further litigation, including any potential appeals or attorney fees applications;

AND NOW, and for the consideration of the agreements, covenants and conditions herein contained, the adequacy and sufficiency of which is expressly acknowledged by the Parties hereto, it is agreed as follows:

DEFINITIONS: As used in this Agreement, any reference to Defendants shall include, but shall not be limited to all of Defendants' predecessors and successors and, in their capacities as such, all of their present, past, and future employers, owners, directors, officers, members, board members, trustees, stockholders, representatives, employees, attorneys, insurers/reinsurers (the inclusion of the insurers/reinsurers is only with regard to any insurance coverage applicable to the Claims of Claimant), and any and all agents and assigns, as well as any affiliate, parent or controlling corporation, partner, division and subsidiary; and any reference to Claimant or Green shall include, in their capacities as such, his respective heirs, administrators, representatives, agents, and assigns.

1.    SETTLEMENT PAYMENT.

    a.    As a result of a settlement conference conducted by Magistrate Judge Donio and ongoing negotiations by and between the Parties, the Parties have negotiated the full and final settlement of all of Claimant's claims against Defendants for the total sum of fifty thousand dollars ($50,000.00). VBS or its representative shall issue the following settlement payments:

- "Michael Green" in the gross amount of $5,000.00 relating to Claimant's economic claim of damages, including any claim of overtime wages, less any and all appropriate withholdings and deductions. An IRS form W-2 shall be issued to Claimant for this amount;
- "Michael Green" in the amount of $24,709.86 for claimant's claims of non-economic damages. An IRS form 1099 shall be issued to Claimant for this amount.
- "Karpf, Karpf & Cerutti, P.C., LLC" in the total amount of $20,290.14 representing attorney's fees and costs. An IRS form 1099 shall be issued to the Law Firm for this amount.

The payments described herein shall be delivered to Karpf, Karpf & Cerutti, P.C., 3331 Street Road, Two Greenwood Square, Suite 128 Bensalem, PA 19020. Claimant agrees, acknowledges and authorizes Defendants and/or its representative to provide Claimant with direct notification of the tender of the settlement payments referenced above to his Attorneys and as required by N.J.A.C. 11:2-17.11.

2

Said payment(s) will be forwarded as soon as practicable but no later than fourteen (14) days from receipt by Defendants' attorneys of the Claimant's fully executed portion of the Settlement Agreement and General Release, an executed W-4 and W-9 for Claimant and for his attorneys, the Child Support Judgment Search Report reflecting no child support judgments or liens and Court approval of the settlement.

Claimant further acknowledges and agrees that he would not be entitled to receive the Settlement Payments set forth above if he did not make the promises that he is making in this Agreement. Claimant further affirms that with the payment of the Settlement Payments he has been paid and/or has received all compensation, wages, bonuses, commissions, benefits or any other monies due and owing to him from Defendants.

b.  The Parties understand and agree that an IRS Form 1099 designating non-wage settlement payments as "other income" will be issued for a portion of the settlement payments referenced above. Claimant agrees to assume full liability for applicable state, federal and local taxes that may be required by law to be paid with respect to any settlement payment described herein. Claimant further agrees that in the event that the Internal Revenue Service or any other taxing authority deems any tax, interest, penalties or other amounts to be due from Defendants with respect to this settlement and based upon the failure or refusal of Claimant to pay the tax attributable to Claimant, Claimant will fully and completely indemnify Defendants for any sums Defendants may be required to pay, including any penalty and/or interest. It is the intent of the parties that the payments in paragraph 1 (a) above will be Defendants total payment to or for the benefit of Claimant. Claimant acknowledges and agrees that he is solely and completely responsible for any tax obligations, liabilities, or consequences arising out of the execution of this Agreement and the payment under paragraph 1. Claimant acknowledges that neither Defendants nor any of Defendants' representatives or attorneys have made any promise, representation, or warranty, express or implied, regarding the tax consequences of the payment under paragraph 1.

c.  Claimant certifies and warrants to Defendants that an appropriate judgment search has been conducted. Claimant agrees to provide a copy of said judgment search to Defendants in accordance with the applicable statute as part of the settlement. In the event Claimant has outstanding child support judgments, Claimant hereby acknowledges and agrees that any outstanding child support judgment or lien must be satisfied out of the proceeds of this settlement prior to any payment to Claimant and that he will fully and completely indemnify Defendants for any sums Defendants may be required to pay, including reasonable attorneys' fees and costs, with respect to any such outstanding judgments.

3

2.    DISMISSAL/WAIVER OF ACTION.

Claimant understands and agrees that in conjunction with this settlement the Complaint will be voluntarily dismissed with prejudice and without costs.  Claimant represents that he has not, and agrees to not bring any other litigation or claim against Defendants relative to the issues contained in these Claims and/or relating to his employment or relationship with Defendants.

3.    RELEASE.

In consideration for the payment and other consideration provided for in this agreement, Claimant personally and for his estate and/or heirs waives, releases and gives up any and all claims, demands, obligations, damages, liabilities, causes of action and rights, in law or in equity, known and unknown, including but not limited to any claim or potential claim for attorney's fees and costs, that he may have against Defendants including, but not be limited to, all of Defendants' predecessors, successors, affiliates, subsidiaries and/or any and all of its present and/or former employers, owners, officers, directors, members, board members, trustees, stockholders, agents, employees, insurers/reinsurers (the inclusion of the insurers/reinsurers is only with regard to any insurance coverage applicable to the Claims of Claimant), attorneys, representatives, and assigns (present and former), and their respective successors and assigns, heirs, executors and legal or personal representatives, based upon any act, event, or omission occurring before the execution of this Agreement, including, but not limited to, any events related to, arising from, or in connection with Claimant's employment and/or relationship with Defendants.  Claimant specifically waives, releases and gives up any and all claims arising from or relating to his relationship and/or association with Defendants based upon any act, event, or omission occurring before the effective date of this Agreement including, but not limited to, any claim that was asserted or could have been asserted under any federal and/or state statutes,

4

regulations, contract (express or implied) and/or common law including, but not limited to, any potential claim relating to the following (including amendments thereto):

    a.    The National Labor Relations Act;

    b.    Title VII of the Civil Rights Act of 1964;

    c.    The Genetic Information Nondiscrimination Act of 2008;

    d.    Sections 1981 through 1988 of Title 42 of United States Code;

    e.    The Employment Retirement Income Security Act of 1974;

    f.    The Immigration Reform Control Act;

    g.    The Americans with Disabilities Act;

    h.    The Age Discrimination in Employment Act of 1967;

    i.    The Fair Labor Standards Act;

    j.    The Occupational Safety and Health Act;

    k.    The Family and Medical Leave Act of 1993;

    l.    The Equal Pay Act;

    m.    The New Jersey Law Against Discrimination;

    n.    The New Jersey Wage Law;

    o.    The Equal Pay Law for New Jersey;

    p.    The New Jersey Worker Health and Safety Act;

    q.    The New Jersey Family Leave Act;

    r.    The New Jersey Conscientious Employee Protection Act;

    s.    Any anti-retaliation provision of any statute or law including , but not limited to, N.J.S.A. 34:15-39.1;

t.   Any other federal, state or local, civil or human rights law or any other local, state or federal law, regulation or ordinance, any provision of any federal or state constitution, any public policy, contract, tort or common law, or any losses, injuries or damages (including back pay, front pay, liquidated, compensatory or punitive damages, attorney's fees and litigation costs).

This Agreement does not apply to any claims that cannot be released as a matter of law, such as those that arise after the date Claimant executes this Agreement or claims for ERISA plan benefits. This Agreement does not apply to any worker's compensation claim or claims that may be asserted by Claimant. This Agreement also does not apply to any claims which may be asserted in an administrative charge filed with a governmental or regulatory enforcement agency, including the Equal Employment Opportunity Commission (EEOC) or comparable state or local agencies, although Claimant releases any right to monetary recovery, reinstatement right, or other legal or equitable relief in connection with such a charge. If any claim is not subject to release, to the extent permitted by law, Claimant waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Defendants are a party.

Claimant hereby acknowledges that he has twenty-one (21) days to review and consider the Agreement, which waives his rights (if any) under the Age Discrimination in Employment Act ("ADEA") (29 U.S.C. § 621 et seq.), and that his execution of the Agreement prior to the expiration of that time period constitutes an express waiver to the consideration period. Claimant further acknowledges that he has seven (7) days from the date of execution of the

Agreement to rescind the Agreement by giving clear, written notice signed by him personally to Employer's attorney.

4.    MEDICARE DISCLAIMER.

Claimant represents and warrants that he is not enrolled in the Medicare program or Medicare Advantage Plan and was not enrolled at the time of any released accident, occurrence, injury, illness, disease, loss, claim, demand, or damages that are subject to this Agreement and the terms herein ("Released Matters") or anytime thereafter through the date of this Agreement. Claimant also represents that he has accurately and truthfully provided information, including but not limited to his name, gender, date of birth, and Social Security number (collectively "Personal Information") sufficient to permit  Defendants or their representatives to verify his Medicare beneficiary status with the Centers for Medicare & Medicaid Services ("CMS") within the U.S. Department of Health and Human Services, including any agents, representatives, or contractors of CMS, such as the Coordination of Benefits Contractor ("COBC") or Medicare Secondary Payer Recovery Contractor ("MSPRC").  Claimant also represents that such Personal Information remains accurate as of the date this Agreement is executed.  Claimant also represents and warrants that he understands that such information is required pursuant to the Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L. 110-173)("MMSEA"), which, in part, amended the Medicare Secondary Payer statute ("MSP") at 42 U.S.C. § 1395y(b)(7) and (8).

5.    MEDICAID DISCLAIMER.

Claimant represents and warrants that no liens, claims, demands, subrogated interests, or causes of action of any nature or character, including Medcaid, exist or have been asserted arising from or related to any released claims.  Claimant further agrees that Claimant, and not

Defendants shall be responsible for satisfying all such liens, claims, demands, subrogated interests, or causes of action that may exist or have been asserted or that may in the future exist or be asserted.

6.    MEDICARE INDEMNIFICATION OBLIGATION.

Claimant agrees to indemnify and hold harmless Defendants from any and all claims, demands, liens, subrogated interests, and causes of action of any nature or character that have been or may in the future be asserted by Medicare and/or persons or entities acting on behalf of Medicare, or any other person or entity, arising from or related to this Agreement, the payment of the Settlement Sum as contained in paragraph 1, any Conditional Payments, as defined under the Medicare Secondary Payer ("MSP") Statute and implementing regulations, made by Medicare, or any medical expenses or payments arising from or related to any Released Matters that is subject to this Agreement or the release set forth herein, including but not limited to: (a) all claims and demands for reimbursement of Conditional Payments or for damages or double damages based upon any failure to reimburse Medicare for Conditional Payments; (b) all claims and demands for penalties based upon any failure to report, late reporting, or other noncompliance with or violation of Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L. 110-173) ("MMSEA") that is based in whole or in part upon late, inaccurate, or inadequate information provided to Defendants by Claimant or upon any failure of Claimant to provide information; and (c) all Medicaid liens.  This indemnification obligation includes all damages, double damages, fines, penalties, attorneys' fees, costs, interest, expenses, and judgments incurred by or on behalf of Defendants in connection with such claims, demands, subrogated interests, or causes of action.

8

7.    MEDICARE AND MEDICAID RELIANCE.

It is understood and agreed that Defendants expressly relied upon the promises, representations, and warranties made by Claimant in this Agreement; that any breach of such promises, representations, and warranties would constitute a material breach of this Agreement; and that in the event of any such breach, Defendants shall be entitled to any and all of the following relief: (1) the indemnification and hold harmless protection set forth herein; (2) specific enforcement of all promises and undertakings made by Claimant hereunder; and (3) all other relief and damages available at law or in equity.

8.    NO COOPERATION/PARTICIPATION.

Claimant covenants and agrees that he has not and will not provide information, consulting advice, direction, information, instruction or suggestions, or otherwise cooperate with or assist in any manner, with any entity or person, including, but not limited to, any employee or former employee of Defendants, asserting or seeking to assert, any cause of action, charge or claim of any type whatsoever against Defendants unless compelled to do so by force of law or subpoena. Further, Claimant will not authorize any third-party, including his attorneys, to provide information or consulting advice or counsel to any entity or person unless compelled to do so by force of law or subpoena. Notwithstanding the proceeding, nothing in this paragraph shall prohibit, limit or prevent Claimant's attorneys from entering into an attorney-client relationship with any person or entity or from providing legal services or advice to any person or entity.

9.    NON-DISPARAGEMENT.

The Parties agree to not make any disparaging statements or social media posting concerning each other or any of Defendants' agents or employees, current or former, or to

9

defame each other or any of Defendants' agents and/or employees, current or former, in any

manner to any person or entity.  The Parties agree not to authorize any person or entity to make

any disparaging statements  or social media postings about the other or about any of Defendants'

practices, agents, employees, current and former, to any person or entity.   For purposes of this

Paragraph only, the use of the term "Parties" shall only apply to Claimant and the upper

management of VBS, including Adam Prussel and Gene Masco.

Claimant shall advise any potential employers seeking to confirm his employment with

VBS that any such request must be directed to the Adam Prussel at VBS.  Claimant agrees to

make every effort to advise potential employers seeking to confirm his employment with VBS

that requests for employment verifications should be directed to Adam Prussel in writing. .  VBS

agrees and represents that if it is contacted by potential employersof Claimant and unless

compelled by law, it shall confine a timely response to providing solely Claimant's dates of

employment and job title and will provide no other information and shall confirm that it is the

policy of Defendants to limit responses to providing only such information.

10.    ATTORNEY'S FEES.

The parties agree, to the extent applicable, that they will bear their  own costs and

attorney's fees which have been incurred (if applicable) in connection with the within matter and

in conjunction with the negotiation and preparation of this Agreement and that no amounts other

than the payments to be made pursuant to paragraph one (1) of this Agreement shall be sought by

or owed in connection with this matter and no party shall be considered a prevailing party.

11.    ENFORCEMENT OF THIS AGREEMENT

In the event any action is brought to enforce this Agreement or due to a breach, the prevailing

party shall be entitled to reasonable attorney fees and costs from the other party.  The term

"prevailing party" shall mean the party recovers an award based upon a judgment and/or any other court-ordered relief.

    12.    <u>NO ADMISSION OF LIABILITY.</u>

Defendants expressly deny and dispute the allegations and assertions of Claimant. It is expressly understood that neither the execution of this Agreement, nor any other action taken by Defendants in conjunction with Claimant's alleged claims or this settlement, constitutes admissions by Defendants of any violation of any law, duty or obligation. Defendants and Claimant expressly agree that they have entered into this Agreement for reasons other than the merits of the case, including to avoid the cost of litigation and that no party admits any liability to any other.

    13.    <u>NO EMPLOYMENT RIGHTS WITH DEFENDANTS AND NO RE-ENTRY.</u>

Claimant represents and agrees that he shall not at any time knowingly or intentionally seek or accept future employment with Defendants. A breach of this paragraph by Claimant will constitute lawful and just cause to refuse to employ Claimant or to terminate his employment if already employed, and he shall have no cause of action against Defendants for such refusal or termination.

Further, Claimant acknowledges that he has no legal, personal or business purpose to be on the premises of Defendants and that, therefore, he shall not knowingly or intentionally enter upon such premises at any time or for any reason unless specifically asked or invited to enter by Defendants.

    14.    <u>ENTIRE AGREEMENT.</u>

This Agreement and General Release contains the sole and entire Agreement between Defendants and Claimant. The Parties represent and acknowledge that, prior to executing this

Agreement, they had ample time to consult with legal counsel prior to making the decision to execute this Agreement, and that neither Claimant nor Defendants have relied upon any representation or statement not set forth in this Agreement made by any other party, or their counsel or representatives, with regard to the subject matter of this Agreement. Claimant acknowledges and agrees that no other representations or statements have been made by Defendants, except as expressly set forth herein, in order to induce him to execute this Agreement. Defendants acknowledge and agree that no other representations or statements have been made by Claimant, except as expressly set forth herein, in order to induce them to execute this Agreement. No other promises or agreements shall be binding unless in writing, signed by the Parties, and expressly stated to represent an amendment to this Agreement.

15.    SEVERABILITY.

The Parties agree that if any Court declares any portion of this Agreement unenforceable, the remaining portions shall be fully enforceable.

16.    GOVERNING LAWS.

This Agreement shall be construed in accordance with and be governed by the laws of the State of New Jersey.

17.    JURISDICTION AND VENUE.

Any action brought to enforce this Agreement shall be brought in a state or federal court situated in the State of New Jersey and each party waives all questions of personal jurisdiction and submits to such jurisdiction.

18.    BINDING EFFECT.

This Agreement is binding upon and inures to the benefit of Claimant and Defendants and their respective successors, heirs, assigns, agents, legal representatives, attorneys,

12

shareholders, officers, directors, employees, divisions, parent companies, subsidiaries or affiliated corporations.

19.   CONSTRUCTION AND INTERPRETATION.

Since the Parties have consented to the form of the Agreement, it is agreed that the provisions are not to be construed and/or interpreted against any or either of the Parties.

20.   MANNER OF EXECUTION.

This Agreement and General Release may be executed in one or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.

**The Parties each understand and agree that they have had ample time to seek the advice of counsel prior to executing this Agreement and that they have knowingly and voluntarily decided to execute this Agreement with the intent to be legally bound by it and which settles and releases all of Claimant's claims against Defendants.**

Witnessed or Attested by:

_____      _____      Date: 5 / 8 / 19
                             **MICHAEL GREEN**


_____      _____      Date:
                             **ADAM PRUSSEL**


_____      _____      Date:
                             **GENE MASCO**

13

_____          _____ o/b/o
                                 **VENTNOR BEAUTY SUPPLY, INC.**     **Date:**


                                 _____
                                 **Title**

LEGAL/121742895.v1

14